FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 AUG 18  PM 2: 18

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DONNEL COLEMAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-0799** |
| **N. BURL CAIN, WARDEN**<br>**LOUISIANA STATE PENITENTIARY** | **SECTION "N" (2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).



the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED**

**WITH PREJUDICE** as time-barred.

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Donnel Coleman, is incarcerated in the Louisiana State

Penitentiary in Angola, Louisiana.[2]   On December 16, 1998, Coleman and a co-

defendant, Kelvin W. Smith, were charged by bill of information in Orleans Parish with

distribution of a substance falsely represented to be crack cocaine.[3]   The Louisiana

Fourth Circuit Court of Appeal summarized the facts of the case in relevant part as

follows:

> On September 22, 1998, New Orleans Police Officer Valdemetreia
> McCollum and State Trooper Derrick Stewart were assigned to a "buy-
> walk operation" called "Operation Trick or Treat." Officer McCollum
> testified that she and Trooper Stewart were the undercover police officers
> who negotiated the narcotics sales. Back up officers monitored them via
> audio and video equipment. As Officer McCollum and Trooper Stewart
> drove through the area of Amelia and Magazine Streets, the defendant
> made eye contact with and motioned to Officer McCollum. She parked her
> vehicle and the defendant and another man, later identified as Kelvin
> Smith, walked up to the vehicle. The defendant asked what she wanted.
> Officer McCollum told the defendant that she wanted to buy a ten-dollar
> piece of crack cocaine. The defendant and Smith told Officer McCollum
> that all they had was a twenty-five-dollar rock of crack. She told them that
> she did not have that much money. She stated that she had enough money
> for a ten or twenty dollar rock of crack cocaine. The defendant then told
> Smith to give Officer McCollum the other piece that they had earlier.

---

[2]Rec. Doc. No. 1, Petition.

[3]St. Rec. Vol. 1 of 4, Bill of Information, 12/16/98.

2

Smith said, "You're sure?" The defendant responded "Yeah, give'em the other piece." Smith reached into his pocket and gave Officer McCollum the other piece of crack cocaine. She then gave them a twenty-dollar bill. After she drove away from the scene, she realized that the defendant and Smith had sold her bunk. At trial, Officer McCollum identified the videotape of the incident and testified that the videotape accurately reflected the events. The officer also identified the object which the defendant and Smith sold to her.

* * *

Kelvin Smith testified on behalf of the defendant. He acknowledged that he was arrested for distribution of bunk and pled guilty to that offense. Smith stated that he knew the defendant and that they were friends. Smith testified that the defendant was not with him on the day that Smith sold bunk to Officer McCollum. He testified that the defendant was in the area that day but that the defendant was not part of the deal. According to Smith, the defendant did not know that Smith was selling bunk. The defendant did not get any money out of the deal.

The defendant testified that he was not involved in the drug deal. He acknowledged prior convictions for possession of cocaine and attempted armed robbery. He stated that he did not physically participate in the narcotics transaction. He admitted that he was standing next to Smith when Smith sold the bunk to Officer McCollum and told Smith to give Officer McCollum "the twenty" he had.

State Record Volume 2 of 4, Fourth Circuit Opinion, 2000-KA-2280, p. 2-4, September 26, 2001; State v. Coleman, 798 So.2d 338 (La. App. 4th Cir. 2001) (Table).

Petitioner's co-defendant, Kelvin Smith, entered a plea of guilty on January 6, 1999 and was sentenced to three years in prison, which was suspended, with two years of active probation.[4] Coleman was subsequently tried before a six person jury on July

_____

[4]St. Rec. Vol. 1 of 4, Minute Entry, 1/6/99.

7, 1999.[5]  He was found guilty of the lesser offense of attempted distribution of false drugs.[6]

The State thereafter filed a multiple offender bill and hearings were held on August 17, 1999 and September 14, 1999.[7]  At the second hearing, Coleman admitted that he was the same person as the person in the prior convictions and the court sentenced him as a third offender to serve life imprisonment without benefit of parole, probation or suspension of sentence.[8]

About seven months later, on April 7, 2000, an attorney filed a motion for reconsideration of the sentence and a motion for an out-of-time appeal on behalf of Coleman.[9]  The trial court denied the motion to reconsider but granted the out-of-time appeal.[10]

_____

[5]St. Rec. Vol. 1 of 4, Trial Minutes, 7/7/99; St. Rec. Vol. 2 of 4, Trial Transcript, 7/7/99.

[6]St. Rec. Vol. 1 of 4, Trial Minutes, 7/7/99; Possible Verdicts, 7/7/99.

[7]St. Rec. Vol. 1 of 4, Multiple Bill, 7/14/99; Minute Entry, 7/14/99; Minute Entry, 8/17/99; St. Rec. Vol. 2 of 4, Sentencing Minutes, 9/14/99; Multiple Bill Hearing Transcript, 8/17/99; Multiple Bill Hearing Transcript, 9/14/99.

[8]St. Rec. Vol. 2 of 4, Sentencing Minutes, 9/14/99; Multiple Bill Hearing Transcript, p. 3-4, 9/14/99.

[9]St. Rec. Vol. 2 of 4, Motion for Out of Time Appeal, 4/7/00; Motion to Reconsider Sentence, 4/7/00; Transcript of Motion for Out of Time Appeal, 4/7/00.

[10]St. Rec. Vol. 2 of 4, Transcript of Motion for Out of Time Appeal, 4/7/00; Trial Court Order (appeal), 4/7/00; Trial Court Order (sentence), 4/7/00.

On appeal, Coleman's counsel alleged that the evidence was insufficient to support the conviction and that the sentence was excessive.[11]  On September 26, 2001, the Louisiana Fourth Circuit affirmed Coleman's conviction and sentence, finding his claims to be without merit.[12]

On October 29 and November 3, 2001, respectively, Coleman's counsel filed a writ application and Coleman also filed a pro se application in the Louisiana Supreme Court, both challenging the findings of the appellate court.[13]  The Louisiana Supreme Court subsequently denied both applications without reasons on September 13, 2002, and October 14, 2002, respectively.[14]

Eleven months later, on September 2, 2003, Coleman submitted an application for post-conviction relief to the state trial court, arguing that he was not advised of his right to remain silent at the multiple bill hearing and that his counsel was ineffective for failing to object to the failure to so advise him and to the State's proof at the multiple bill

---

[11]St. Rec. Vol. 2 of 4, Appeal Brief, 2/12/01; 4th Cir. Opinion, 2000-KA-2280, p. 2-4, 9/26/01.

[12]St. Rec. Vol. 2 of 4, 4th Cir. Opinion, 2000-KA-2280, p. 2-4, 9/26/01; State v. Coleman, 798 So.2d at 338.

[13]St. Rec. Vol. 2 of 4, La. S. Ct. Letter, 2001-K-2877, 10/29/01; St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 01-K-2877, 10/29/01; La. S. Ct. Writ Application, 01-KO-2962, 11/3/01.

[14]State v. Coleman, 824 So.2d 1191 (La. 2002); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2001-K-2877, 9/13/02; State v. Coleman, 827 So.2d 413 (La. 2002); La. S. Ct. Order, 2001-KO-2962, 10/14/02.

hearing.[15] Inexplicably, the state trial court issued four separate rulings by two different judges to resolve this application.

First, in an order signed September 22, 2003, filed November 6, 2003, and issued by Judge Pro Tempore Salvatore Panzeca, the court found the claims to be without merit.[16] Coleman sought review of this order in the Louisiana Fourth Circuit on November 18, 2003.[17] The appellate court denied the writ application on December 9, 2003, finding no error in the trial court's judgment and because consideration of sentencing errors was barred on post-conviction review, citing State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996).[18]

---

[15]The record does not contain a file stamped copy of this application. Coleman dated his signature on the submission on September 2, 2003. See St. Rec. Vol. 1 of 4, Application for Post Conviction Relief, signed 9/2/03; Writ of Habeas Corpus Ad Testificandum, signed 9/2/03.

[16]St. Rec. Vol. 1 of 4, Trial Court Judgment, signed 9/22/03, filed, 11/6/03; Minute Entry, 11/5/03.

[17]St. Rec. Vol. 3 of 4, 4th Cir. Writ Application, 2003-K-2018, 11/18/03.

[18]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2003-K-2018, 12/9/03. In State ex rel. Melinie, the Louisiana Supreme Court ruled that claims of excessive sentence or errors in sentencing that should have been raised on direct appeal are not proper for post-conviction relief. State ex rel. Melinie, 665 So.2d at 1172 (citing La. Code Crim. P. art. 930.3). La. Code Crim. P. art. 930.3 lists the grounds for which post-conviction relief may be granted by Louisiana courts.

On January 15, 2004, Coleman sought similar relief from the Louisiana Supreme Court.[19]  The court denied the application on February 4, 2005, citing La. Code Crim. P. art. 930.3 and State ex rel. Melinie.[20]

In the meantime, Judge Linda Van Davis of the state trial court entered two orders on November 13, 2004, and a judgment on November 14, 2004, denying Coleman's September 2, 2003 application for post-conviction relief for failure to state a claim enumerated in La. Code Crim. P. art. 930.3.[21]

On November 13, 2004, Judge Davis also denied Coleman's request for production of documents filed January 9, 2004.[22]  Prior to this ruling, on October 5, 2004, Coleman had filed a writ application in the Louisiana Fourth Circuit seeking copies of certain documents and transcripts.[23]  The court denied the application on November 17, 2004, for Coleman's failure to state a particularized need for the

---

[19]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 04-KH-160, 1/15/04.

[20]State ex rel. Coleman v. State, (La. 2005); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2004-KH-0160, 2/4/05.

[21]St. Rec. Vol. 1 of 4, Trial Court Order I, 4/13/04; Trial Court Order II, 4/13/04; St. Rec. Vol. 3 of 4, Trial Court Judgment, 4/14/03.

[22]St. Rec. Vol. 1 of 4, Motion for Production of Documents, 1/9/04; Trial Court Order III, 4/13/04.

[23]St. Rec. Vol. 3 of 4, 4th Cir. Writ Application, 2004-K-1730, 10/5/04.

transcripts and because review of sentencing errors was legally barred on post-conviction review.[24]

II.   <u>FEDERAL HABEAS PETITION</u>

On March 9, 2005, Coleman filed a petition for federal habeas corpus relief seeking relief on five grounds:[25] (1) The evidence was insufficient to support the conviction. (2) The sentence was unconstitutionally excessive. (3) The state trial court did not advise him of his right to remain silent at the multiple bill hearing. (4) Counsel was ineffective for failing to object to the court's failure to advise him of his right to remain silent. (5) Counsel was ineffective for failure to object to the State's proof at the multiple bill hearing.

The State responded to the petition by arguing that Coleman's claims are without merit, that the federal petition "appears" to be timely filed and that he has exhausted state court relief.[26]   However, the State's timeliness calculation, based on an erroneous determination and application of the finality and tolling provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, completely fails to consider the significant effect of Coleman's out-of-time appeal on these calculations.

---

[24]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2004-K-1730, 11/17/04.

[25]Rec. Doc. No. 1, Brief in Support, p. 3.

[26]Rec. Doc. No. 7.

III.   STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including

28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[27] and applies to

habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir.

1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to

Coleman's petition, which, for reasons discussed below, is deemed filed in this court on

February 15, 2005.[28]

The threshold questions in habeas review under the amended statute are whether

the petition is timely and whether the claims raised by the petitioner were adjudicated on

the merits in state court; i.e., the petitioner must have exhausted state court remedies and

must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20

(5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[27]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Coleman's petition on March 9, 2005, when he paid the filing fee.  Coleman, however, dated his signature on the application on February 15, 2005, which is earliest date he could have submitted the petition to prison officials for mailing to the court. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

The record reflects that Coleman has exhausted his state court remedies and may in part be procedurally defaulted, an issue which is not addressed by the State in its response. For the following reasons, however, I find that Coleman's petition is <u>not</u> timely filed under the AEDPA and must be dismissed with prejudice for that reason.

IV.   STATUTE OF LIMITATIONS

A.   NO WAIVER OF THE LIMITATIONS DEFENSE

The AEDPA's statute of limitations is an affirmative defense, rather than a jurisdictional mandate. <u>Davis v. Johnson</u>, 158 F.3d 806, 810 (5th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1074 (1999). Consequently, the limitations defense may be waived, but the waiver must be <u>express</u> and <u>intentional</u>. <u>Scott v. Johnson</u>, 227 F.3d 260, 263 (5th Cir. 2000) (citing <u>Smith v. Johnson</u>, 216 F.3d 521 (5th Cir. 2000)), <u>cert. denied</u>, 2001 WL 167908 (Feb. 12, 2001); <u>Magouirk v. Phillips</u>, 144 F.3d 348 (5th Cir. 1998).

In the instant case, the State has erroneously concluded that the petition "appears" to have been timely filed. However, the State's calculation of the conviction finality date and the AEDPA tolling periods in its response to the petition are inaccurate under any reading of the law. Under a proper calculation, using the precedent set forth below, Coleman's petition is <u>not</u> timely filed.

The State could not have intended to commit error or mistake through its counsel's tentative statement and miscalculations in a response memorandum, and thus did not

expressly waive its limitations defense by incorrectly concluding that the petition is timely. See Simpkins v. Washington Metropolitan Area Transit Authority, 2 F. Supp.2d 52 (D.D.C. 1998) (calculation error based on mistake did not constitute waiver of limitations defense). Furthermore, this court is not required to accept a waiver, either express or implicit, where it is not judicially warranted. Kunkle v. Dretke, 352 F.3d 980, 989-90 (5th Cir. 2003) (citing McGee v. Estelle, 722 F.2d 1206 (5th Cir. 1984), and Granberry v. Greer, 481 U.S. 129 (1987)); Graham v. Johnson, 94 F.3d 958, 970 (5th Cir. 1996).

For these reasons, I find that the State has not waived the limitations defense through its inaccurate calculation of the conviction finality date and the AEDPA limitations and tolling periods. Coleman is hereby placed on notice that the limitations issue is being considered by this court. Fisher v. State, 169 F.3d 295, 301 (5th Cir. 1999); Magouirk, 144 F.3d at 358, and any objection by petitioner to the court's assessment of this issue must be timely filed as required at the end of this report.

B.    THE PETITION IS UNTIMELY FILED

Section 2244(d)(1) of the federal habeas statute requires that a petitioner bring his Section 2254 claims, among other things not relevant here, within one year from the date of finality of the judgment of conviction.[29] The court must therefore determine when

---

[29]Specifically, Section 2244(d) provides:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas

Coleman's conviction became final to determine the commencement date for calculating the timeliness of this federal habeas corpus petition.

In its response, the State contends that Coleman's conviction became final for purposes of the AEDPA on October 14, 2002, when his pro se writ application to the Louisiana Supreme Court was denied following his appeal, which the State did not recognize as an out-of-time appeal. For the following reasons, I find that this conclusion is contrary to federal law.

As outlined above, Coleman was sentenced as a multiple offender on September 14, 1999. Ordinarily, his conviction would become final five days later, on Sunday, September 19, 1999, or September 20, 1999, the first business day thereafter, when he did not timely file a written notice of appeal or file for reconsideration of his sentence.

---

corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

Cousin v. Lensing, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914[30]). However, in the instant case, Coleman was granted and received an out-of-time appeal almost seven months after his conviction would otherwise be considered final under the AEDPA. The question before the court, therefore, is whether the out-of-time appeal had an impact on the commencement of AEDPA's statute of limitations period.

In Salinas v. Dretke, 354 F.3d 425 (5th Cir. 2004), cert. denied, 541 U.S. 1032 (2004), the United States Fifth Circuit Court of Appeals addressed the question of whether an out-of-time petition for appellate review was still within "direct review" such that it restarts the finality of the state conviction at issue for AEDPA limitations purposes. Id., at 429. The Fifth Circuit squarely held that it does not.

In so finding, the Salinas court acknowledged that the granting of a petition for out-of-time appellate review by the Texas state courts restored the petitioner to the position he was in when he first possessed the right to direct review under state law. Id. at 429; Cockerham v. Cain, 283 F.3d 657 (5th Cir. 2002) (same, under Louisiana law).

---

[30]At the time of Coleman's conviction, La. Code Crim. P. art. 914 required that a criminal defendant move for leave to appeal within five days of the order or judgment that is being appealed or of a ruling on a timely motion to reconsider a sentence. Failure to move timely for appeal under Article 914 renders the conviction and sentence final at the expiration of the period for filing the motion for appeal. State v. Counterman, 475 So.2d 336, 338 (La. 1985). Article 914 was amended by La. Acts 2003, No. 949, § 1 to provide 30 days for filing of the notice of appeal. Because this statutory amendment occurred well after Coleman's sentencing, it is inapplicable to this case.

The court determined, however, that the granting of out-of-time state appellate review did not affect finality under federal law.

The Fifth Circuit considered the fact that, under Texas law, in order to obtain out-of-time appellate review, a petitioner must make his request through the collateral review process. The court concluded that this procedural necessity took the petitioner out of the "direct review" process and entitled him to nothing more than tolling of the federal limitations period. Id. at 430.

Thus, for purposes of federal law, the Fifth Circuit held in Salinas that the granting of a request for out-of-time review "tolls AEDPA's statute of limitations . . . but it does not require a federal court to restart the running of AEDPA's limitations period altogether." Id. at 430 (footnote omitted) (emphasis added); see also, McGee v. Cain, 104 Fed. Appx. 989, 991-992 (5th Cir. 2004) (applying Salinas rationale to Louisiana out-of-time writ application). The Fifth Circuit held that, for limitations purposes, Salinas's conviction was final when the direct review process ended and it remained final for AEDPA purposes. Id. The Salinas court further resolved that the fact that petitioner was eventually granted an out-of-time appeal due to ineffective assistance of counsel (i.e., counsel failed to lodge the appeal timely) did not restart the federal limitations period, nor did attorney error or neglect constitute a basis for equitable tolling. Salinas, 354 F.2d at 432 (quoting Cousin, 310 F.3d at 848).

Under Louisiana law, as in Texas, to obtain an out-of-time appeal, a petitioner must file an application for post-conviction relief. McGee, 104 Fed. Appx. at 991 (citing State v. Counterman, 475 So.2d at 339). Thus, the analysis of the United States Fifth Circuit Court of Appeals in Salinas applies to Louisiana convictions, leaving such convictions final for purposes of commencement of the AEDPA limitations period at the conclusion of the original period for seeking direct review. Id.

In the instant case, Coleman, like the petitioners in Salinas and McGee, was granted his out-of-time appeal through a collateral post-conviction request made to the state trial court. The out-of-time appeal process afforded Coleman only with tolling of the AEDPA's limitations period. However, the out-of-time appeal did not restart or revive the finality of Coleman's conviction for purposes of calculating the commencement date for AEDPA's one-year limitations period. Therefore, the suggestion in the State's response that Coleman's conviction became final at the conclusion of his out-of-time appeal is legally erroneous under Salinas.[31]

Therefore, pursuant to the holding in Salinas, as applied to Louisiana cases in McGee, Coleman's conviction became final on September 19, 1999, or September 20, 1999, the first business day thereafter, which was five days after he was sentenced and

---

[31]Furthermore, because Coleman's out-of-time appeal was not part of the "direct review process" according to Salinas, he is not entitled to tolling for any additional period he would have had to seek review in the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999), cert. denied, 529 U.S. 1099 (2000).

failed timely to appeal. See Cousin, 310 F.3d at 845 (conviction becomes final at the end of the five-day period for filing a notice of appeal under La. Code Crim. P. art. 914) and discussion at footnote 30, infra.

Thus, literal application of the statute would bar Coleman's Section 2254 petition in this court as of September 20, 2000. Under the federal mailbox rule, his federal petition is deemed filed on February 15, 2005, almost four and one-half years after the deadline imposed by the AEDPA, and it must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year period of limitations in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and there exists rare or extraordinary circumstances which prevented timely filing. Pace v. DiGuglielmo, 125 S.Ct. 1807, 1814 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis, 158 F.3d at 810. Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 125 S. Ct. at 1814-15; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

16

The record suggests that Coleman's delayed appeal may have been the result of error on the part of his trial counsel. However, as noted above, the fact that counsel failed to lodge a timely appeal does <u>not</u> constitute a basis for equitable tolling. <u>Salinas</u>, 354 F.2d at 432 (quoting <u>Cousin</u>, 310 F.3d at 848). Coleman therefore has not asserted any reason that might constitute exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions. <u>See</u> <u>United States v. Wynn</u>, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); <u>Coleman v. Johnson</u>, 184 F.3d 398, 402 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); <u>Fisher</u>, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); <u>Cantu-Tzin</u>, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); <u>Davis</u>, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to the pertinent judgment or claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does <u>not</u> create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

<u>Flanagan</u>, 154 F.3d at 199 n.1; <u>accord</u> <u>Brisbane v. Beshears</u>, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); <u>Gray v. Waters</u>, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

18

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 125 S. Ct. at 1812 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). Furthermore, a "pertinent judgment or claim" requires

19

that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

However, a motion for transcripts or copies, like that filed by Coleman, is not "other collateral review" which would entitle a petitioner to statutory tolling under Section 2244(d)(2). Osborne v. Boone, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw). A petitioner is not entitled to the exceptional remedy of tolling while he waits to gather every scrap of paper that might support his post-conviction claims. See Flanagan, 154 F.3d at 199; Brown v. Cain, 112 F. Supp.2d 585, 587 (E.D. La. 2000) (Berrigan, J.), aff'd, 239 F.3d 365 (5th Cir. 2000) (delay in receiving transcripts does not warrant tolling unless petitioner can prove that he had to have transcripts to proceed); Gerrets v. Futrell, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); Jones v. Johnson, 2001 WL 1006062 at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); Grayson v. Grayson, 185 F. Supp.2d 747, 751-52 (E.D. Mich. 2002) (delay in receiving transcript not specifically required to file application does not warrant equitable tolling).

Thus, for the reasons discussed above, the one-year AEDPA limitations period began to run in Coleman's case on September 21, 1999, the day after his conviction is

deemed final.  The limitations period ran uninterrupted for 199 days, until April 7, 2000, when Coleman's counsel filed the motion for an out-of-time appeal.  The limitations period remained tolled until October 14, 2002, when his Louisiana Supreme Court pro se writ application was denied.  La. Code Crim. P. art. 922.

The limitations period began to run again on October 15, 2002, and ran uninterrupted for the remaining 166 days, until it expired on March 29, 2003.  Coleman had no other properly filed state post-conviction or other collateral review proceedings pending during that time period.  Coleman's next such filing was his application for post-conviction relief submitted on September 2, 2003, six months after the AEDPA statute of limitations had already expired.  However, he is not entitled to tolling consideration or rejuvenation of his federal habeas corpus remedy for the subsequent post-conviction filings made after expiration of the AEDPA statute of limitations.  Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000).

Coleman's federal habeas corpus petition is deemed filed on February 15, 2005, almost two years after the expiration of the one-year limitations period established by AEDPA.  Thus, Coleman's petition must be dismissed as untimely under 28 U.S.C. § 2244(d)(1)(A).

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the petition of Donnel Coleman

for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH**

**PREJUDICE** as time-barred under the AEDPA.

A party's failure to file written objections to the proposed findings, conclusions,

and recommendation in a magistrate judge's report and recommendation within ten (10)

days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United

Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).


New Orleans, Louisiana, this _____ day of August, 2005.



_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

22